Melissa A. Reinckens (Bar No. 314657)
melissa.reinckens@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Tel:   (858) 677-1400
Fax:   (858) 677-1401

Tamar Y. Duvdevani (*pro hac vice* pending)
tamar.duvdevani@us.dlapiper.com
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel:   (212) 335-4500
Fax:   (212) 335-4501

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

# SAN DIEGO DIVISION

| | |
|---|---|
| CONSOR ENGINEERS, LLC | CASE NO. **'24CV1684 H    SBC** |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DECLARATORY RELIEF** |
| DOMAIN ASSETS, LLC D/B/A CONSOR IP EXPERTS | |
| Defendant. | |

Plaintiff CONSOR ENGINEERS, LLC ("Consor Engineers" or "Plaintiff") hereby commences this action and seeks declaratory judgments pursuant to 28 U.S.C. § 2201 *et seq*. that no binding contract was ever formed between it and Defendant DOMAIN ASSETS, LLC D/B/A CONSOR IP EXPERTS ("Defendant"), that it is not in breach of that purported contract, and that Plaintiff's longstanding, consistent and good faith use of "Consor" and "Consor Engineers" in connection with its engineering, water, and transportation infrastructure services does not infringe and is not likely to cause confusion with Defendant's trademark rights in its CONSOR mark that it uses in connection with intellectual property valuation, litigation support, and related services.  To this end, Plaintiff alleges as follows:

## **INTRODUCTION**

1.      Plaintiff files this action as a result of Defendant's sporadic lodging of legally unsound trademark infringement claims against it, and Defendant's more recent claim that Plaintiff is in breach of a purported "settlement agreement" governing Plaintiff's use of "Consor."  Plaintiff's use of "Consor" is not infringing, and the parties did not enter into any agreement - they exchanged a few informal emails, and those emails did not form a legally binding agreement.  However, even if an agreement was formed as Defendant claims, Plaintiff did not breach it.  Plaintiff therefore seeks a prompt judicial declaration of its rights so that it may be free of Defendant's baseless threats, which constitute a live controversy that this Court can adjudicate.

2.      Plaintiff is a water and transportation infrastructure engineering firm offering planning, design, structural assessments, construction, and other specialized engineering services.  Plaintiff utilizes a locked-up logo with rounded, lowercase font alongside a circular, stylized icon showing a water droplet and roadway design.  Defendant is an intellectual property consultation firm that offers intellectual property valuation, licensing, litigation support, and transactions services.  Defendant utilizes

a logo with narrow, uppercase font above the words "IP Experts."  Representations of the parties' marks as they appear in commerce are embedded below:



3.    Defendant began its campaign regarding Plaintiff's use of "Consor" in December 2019, claiming that standalone use of Consor without the accompanying "Engineers" constitutes a trademark violation and is likely to cause confusion.  *See* **Exhibit A.**  By February 17, 2020, Plaintiff, through counsel, sent an email to Defendant that, *inter alia*, reiterated confidence in its trademark analysis and argued that Defendant had not presented a viable trademark infringement claim.  Plaintiff also informed Defendant that, despite the weakness of Defendant's claims, "as long as this dispute is kept at a level of a business discussion rather than a legal proceeding, [Plaintiff] is willing to make and has already made various changes to help to ensure that there can be no trademark confusion and to resolve this dispute amicably."  Plaintiff listed a small number of marketing steps it had already taken and confirmations of its already ongoing activities, and then stated that those steps "do

2

not change our conviction that [Defendant's] concerns are misplaced" and that Plaintiff "expect[s] that [Defendant] will accept this good faith effort to avoid the necessity for contentious and formal dispute." *See* **Exhibit C**.  Defendant responded, noting that it accepted and appreciated Plaintiff's good faith efforts, and Plaintiff's counsel responded to that note thanking Defendant for its cooperation and professionalism to resolve the matter.  *See id.*  This was the extent of the parties' substantive communications.  No agreement was drafted, reviewed, or executed by the parties.  No consideration was exchanged.  No sufficiently detailed and definite terms were memorialized, and Plaintiff made no agreement to be bound to maintain the outlined steps in the email for any specific duration.

4.      Four years later, after zero communications between the parties following their 2020 exchange, Defendant sent another email to Plaintiff, this time claiming that Plaintiff's use of "Consor" separated from "Engineers" in its marketing is not only infringing its purported trademark rights, but that Plaintiff is in breach of the parties' agreement supposedly resulting from the parties' email communications in 2020.  *See* **Exhibit D**.  The parties sent additional emails to one another in the first quarter of 2024, with Plaintiff disputing the existence of any agreement or infringement, but noting that regardless, Plaintiff's marketing activity flagged by Defendant has remained relatively and materially unchanged from February 2020. *See* **Exhibit E**.

5.      Defendant did not respond until August 19, 2024, when it transmitted a letter through counsel demanding that Plaintiff "immediately comply with the parties' agreement" regarding Plaintiff's use of "Consor" and, years after the fact, "sign a more formal document reflecting the parties' settlement," threatening that, should Plaintiff refuse to do so, Defendant "will have no choice but to pursue its legal remedies to address the confusion [Plaintiff] is creating."  *See* **Exhibit F**.

6.      Contrary to Defendant's baseless assertions, the parties' communications in 2020 did not constitute a binding settlement agreement, as is

COMPLAINT FOR DECLARATORY RELIEF

evident from the August 19, 2024 demand that the parties enter into an agreement now under renewed threat of litigation.  But even if those emails did create a sufficiently definite contract supported by consideration, which Plaintiff disputes, Plaintiff's marketing set forth in the 2020 emails has not materially deviated from its 2020 status and cannot be construed as a breach.  Plaintiff has not engaged in any wrongful conduct and therefore will not bend to Defendant's unreasonable demands or its threats of imminent litigation based on legally meritless positions.  Instead, Plaintiff seeks declarations from this Court that the parties' 2020 communications do not constitute a binding settlement agreement as Defendant has claimed, and that Plaintiff is neither liable for breach nor trademark infringement resulting from its lengthy use of "Consor" in connection with its sophisticated business offerings.

## **THE PARTIES**

7.     Plaintiff Consor Engineers, LLC is a limited liability company organized and existing under the laws of Florida, with its principal place of business in Miami, Florida.

8.     Upon information and belief, Defendant Domain Assets, LLC D/B/A Consor IP Experts is a limited liability company organized and existing under the laws of Delaware, with its principal place of business in La Jolla, California.

## **JURISDICTION & VENUE**

9.     An actual controversy between the parties exists within the Court's jurisdiction, as to the existence of a valid contract between the parties and as to Defendant's claims of breach and trademark infringement.  The Court is authorized to declare the rights of the parties pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

10.    This Court has subject matter jurisdiction over this action, which involves claims of trademark infringement, pursuant to 15 U.S.C. § 1121 and 28

COMPLAINT FOR DECLARATORY RELIEF

U.S.C. §§ 1331, 1338(a), 2201, and 2202.

11.    This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this judicial district and Defendant has continuously and systematically transacted business and supplied goods and/or services in this judicial district, including business that uses the CONSOR trademark at issue in this action.  Defendant has purposefully availed itself of the benefit of this State and judicial district such that maintenance of this action in this judicial district would not violate due process.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant's principal place of business is located in this district, Defendant transacts business in this district, a substantial part of the events giving rise to the claims asserted arose in this district, and Defendant is subject to personal jurisdiction in this district.

## **FACTUAL ALLEGATIONS**

### **A. Consor Engineers & Its Business**

13.    Plaintiff Consor Engineers is a limited liability company organized and existing under the laws of Florida, with its principal place of business in Miami, Florida.  Plaintiff has multiple locations throughout the United States, including several locations in California.

14.    Plaintiff is a water and transportation infrastructure engineering firm offering planning, design, structural assessments, construction, and other specialized engineering services.  By way of example, some of Plaintiff's projects in California have included underwater inspection of the Golden Gate Bridge for structural damage or deterioration, project management services for the renovation of Harvey Milk Terminal 1 at the San Francisco International Airport, and the development and implementation of seismic strategy rehabilitation to Foresthill Bridge in Placer County, the fourth-tallest bridge in the United States.

15.     Plaintiff offers its clients a powerful combination of integrity, grit, and collaboration, and its projects have achieved much acclaim.  For example, Plaintiff has received awards from various chapters of the American Council of Engineering Companies, the American Society of Civil Engineers, and the American Public Works Association, as well as individual awards from the Illuminating Engineering Society, the International Partnering Institute, the San Francisco chapter of the American Institute of Architects, and the San Francisco Collaborative Partnering Steering Committee.

16.     Approximately 99.0% of Plaintiff's clients are state departments of transportation, municipalities, utilities, or other public agencies throughout the United States and Canada that require civil infrastructure engineering services.  Only about 1.0% of Plaintiff's clients are private entities.  All of Plaintiff's clients are highly sophisticated.

17.     Plaintiff's services are typically obtained for multimillion, multi-year contracted projects, or as long-term, on-call partnerships addressing routine maintenance or emergencies as needed.  No services or products are available for purchase from Plaintiff's website.  Rather, prospective clients must contact Plaintiff and engage in significant discussion regarding the particularities of any desired project before entering into an agreement.  Protracted discussion is important prior to contracting infrastructure engineering services as such projects are expensive and typically purchased with public funds, time-sensitive, and can implicate public safety and accessibility.  As a result, Plaintiff's clients are discerning and highly careful when seeking infrastructure engineering services.

18.     Plaintiff does not advertise its services to the public at large.  Rather, potential clients take the lead in new business acquisition by publicly announcing their intended projects and calling for project proposals.  In response, Plaintiff's marketing team will prepare and deliver a competitive and personalized project proposal to be considered against the bids prepared by other firms.  To the extent that the marketing

team creates general marketing materials, these are sent directly to the sort of public entities characteristic of the firm's typical clients, rather than circulated to the general public.

### B. The History of Consor Engineers and Its Mark

19.     Consor Engineers first launched in December 2018 upon the merger of four regional leaders in engineering consulting services, including AIA Engineers, Infrastructure Engineers, Target Engineering Group, and Johnson-Adams & Associates.

20.     The name "Consor" is derived from the Latin root for "partner, associate, brother/sister," as in the word "consortium."  Plaintiff selected this name to reflect the firm's culture of fostering trusting partnerships with human connections among its clients, colleagues, and communities.  Plaintiff's selection of its name had nothing to do with Defendant, who operated in a completely different field.

21.     Indeed, on December 17, 2019, following a May 3, 2018 application (originally for CONSOR ENGINEERING), the USPTO registered the CONSOR ENGINEERS service mark (U.S. Reg. No. 5,938,940) to Plaintiff's affiliate Consor Intermediate, LLC for International Class 42 services, including: "Land and road surveying; civil engineering; engineering services for the construction of highways, roadways, bridges, highway structures, drainage structures and airports; structural engineering design services; consulting in the field of structural engineering; custom design and engineering of bridges, roads, water management, mass transits, highways, railways and mass transit; transportation and traffic planning services; engineering services in the fields of transportation and traffic."

22.     The USPTO did not consider Defendant's CONSOR mark to be an impediment to the registration of the CONSOR ENGINEERS mark.  Nor did Defendant oppose the registration of the CONSOR ENGINEERS mark when it was published for opposition.

23.    Plaintiff's contemporaneous social media posts and website specimen submitted to the USPTO reflect that, from its launch, Plaintiff utilized a locked-up logo combining the name "CONSOR" with the circular icon of a stylized roadway (the "Consor Engineers Logo"), an example of which is embedded below:[1]



24.    Moreover, the earliest archived copy of Consor Engineer's website available on the Internet Archive, dated November 2, 2019, reflects that from the company's outset Consor Engineers has interchangeably referred to itself as "Consor" or "Consor Engineers."  *See* **Exhibit G** (showing the heading "About CONSOR" followed by the body text "CONSOR Engineers is the unification of…").

25.    Early social media posts also reflect that Consor Engineers has long referred to itself interchangeably as "Consor" or "Consor Engineers," sometimes even

---

[1] *See* @ConsorEng, Facebook, Jan. 9, 2019, https://www.facebook.com/photo/?fbid=358589781639420&set=a.358589808306084 (accessed Sep. 15, 2024); *see also* USPTO, Consor Engineers, "Specimen," Oct. 8, 2019, https://tsdr.uspto.gov/documentviewer?caseId=sn87906056&docId=ORC20191201034052&linkId=1#docIndex=5&page=1 (accessed Sep. 16, 2024).

within the same post, examples of which are embedded below:[2]



26.    Historically and today, Plaintiff's website is located at the domain www.consoreng.com and its Instagram account utilizes the username @consoreng. Consor Engineers also prominently includes a link in its official Instagram "bio" to the @consorengineers linktr.ee account.  An example image is embedded below:[3]



---

[2] *See* @ConsorEng, Facebook, Feb. 25, 2019, https://www.facebook.com/photo/?fbid=393358008162597&set=a.371432027021862 (accessed Sep. 16, 2024); *See id.* at May 13, 2019, https://www.facebook.com/consoreng/posts/pfbid0ku1JTKNVYh9nK7YcjxV34p7YXB7RFNcThhjj8ZmBKtCAzfLGhiQgfii1PzDDUJHtl (accessed Sep. 16, 2024).

[3] *See* @consoreng, Instagram, https://www.instagram.com/consoreng/ (accessed Sep. 16, 2024).

COMPLAINT FOR DECLARATORY RELIEF

27.   Historically and today, Plaintiff's Facebook account utilizes the username @consoreng and the display name CONSOR Engineers.   Facebook additionally identifies Consor Engineers as an "Engineering Service."   An example image is embedded below:[4]



28.   Historically and today, Consor Engineers' Twitter/X account utilizes the username @CONSOREngineers.  An example image is embedded below:[5]



---

[4] *See* @consoreng, Facebook, https://www.facebook.com/consoreng/ (accessed Sep. 16, 2024).

[5] *See* @CONSOREngineers, Twitter/X, https://x.com/consorengineers?lang=en (accessed Sep. 16, 2024).

COMPLAINT FOR DECLARATORY RELIEF

29.     Historically and today, Consor Engineers' LinkedIn account utilizes the username @consoreng and the display name CONSOR Engineers.  LinkedIn further identifies Consor Engineers as a "Civil Engineering" company.  An example image is embedded below:[6]



## C. Defendant and Its Business

30.     On information and belief, Defendant is an intellectual property consultation firm that offers intellectual property valuation, licensing, litigation support, and transactions services for its clients.

31.     On information and belief, the USPTO registered the CONSOR service mark (U.S. Reg. No. 2,457,741) to Defendant on June 5, 2001 for International Class 42 services in "intellectual property consultation."

32.     On information and belief, Defendant does not offer planning, design, structural assessments, construction, or any specialized engineering services regarding water and transportation infrastructure.

33.     On information and belief, Defendant has, from its launch, utilized a logo combining the name "CONSOR" in narrow, uppercase lettering, with a description of its intellectual property services below (the "Consor IP Experts Logo").  A USPTO specimen filed in 2006 shows that this description at some point changed to "IP

---

[6] *See* @consoreng, LinkedIn, https://www.linkedin.com/company/consoreng/ (accessed Sep 16, 2024).

Experts" from "Intellectual Asset Management."  Example images are embedded below:[7]





34.     On information and belief, Defendant's clients are intellectual property holders and highly sophisticated entities, including law firms.  Defendant claims that its clientele includes "Fortune 500 companies, entrepreneurs, internet start-ups, professional firms, non-profit organizations, corporations, banks and investment firms, trademark and tax attorneys, CPA and valuation firms, and international marketing professionals, among others."[8]

35.     On information and belief, no services or products are available for purchase on Defendant's website.  Rather, prospective clients must contact Defendant and undergo a consultation regarding their intellectual property needs prior to engaging Defendant's services.  On information and belief, Defendant's services are relatively expensive, and Defendant's clients are discerning and highly careful when seeking relatively expensive services relating to their valuable intellectual property.

---

[7] *See* USPTO, Consor, "Specimen," Oct. 11, 2006, https://tsdr.uspto.gov/documentviewer?caseId=sn75493607&docId=IPC200610121 30554&linkId=20#docIndex=15&page=4 (accessed Sep. 16, 2024); *see also* Consor IP Experts, https://consor.com/ (accessed Sep. 16, 2024).

[8] *See* Consor IP Experts, "Qualifications," https://consor.com/qualifications (accessed Sep. 16, 2024).

### D. No Likelihood of Confusion

36.     Plaintiff is not aware of any actual confusion in the over four years that the parties have peacefully coexisted in the marketplace.  Specifically, Plaintiff is not aware of any consumers or prospective consumers of the parties' services who believe Plaintiff is affiliated with Defendant as a result of Plaintiff's use of its mark, or are confused as to the source of either party's services.  Defendant has recently claimed that there have been a number of misdirected communications, but such misdirected communications are likely *de minimis* and do not constitute actual confusion evidence.

37.     This lack of any meaningful actual confusion is likely due to many factors relevant to the infringement analysis, examples of which include:  First, Plaintiff and Defendant's marks are markedly dissimilar when viewed as they appear in the marketplace.  They are accompanied by different logos – Plaintiff's logo features a stylized icon representing its services, while Defendant's logo features the words "IP Experts."  Moreover, both Plaintiff and Defendant's websites, social media accounts, and Google search listings immediately and prominently identify the nature of the parties' offered services via text descriptions, videos, and images.

38.     Second, Plaintiff and Defendant offer very different services in very different industries, and do not compete.  Defendant's argument that the parties compete in that they both vaguely offer consulting services, *see* **Exhibit A**, is overly reductive and obscures the vast differences in physical involvement, technical skill and education, and impact on public life and safety that are inherent to infrastructure consulting versus intellectual property consulting.  There is no reason to believe that either party's business will expand into the other party's industry.

39.     Third, Plaintiff and Defendant both offer very expensive and important contractual services, such that their clients are likely to be more discerning and cautious.  The parties target sophisticated entities as their clients who use a high degree of care in selecting professional services that cost thousands if not millions of

dollars.  Moreover, both parties require discussion and/or consultation prior to their engagement, which would dispel any source confusion well before engagement.

**E. Plaintiff's Business Accommodation and Defendant's Threats**

40.    Defendant first contacted Plaintiff on December 2, 2019, while Plaintiff's original application to register CONSOR ENGINEERING as its service mark was pending.  Defendant claimed that Plaintiff's use of "Consor" *and* "Consor Engineering" was causing consumer confusion, but evidenced that claim by merely pointing to a misdirected post on the employer-review platform Glassdoor (posted by an employee, not a confused consumer).  Defendant demanded that Plaintiff use *neither* "Consor" nor "Consor Engineering" in connection with its services. *See* **Exhibit A**.

41.    On December 10, 2019, Plaintiff rejected Defendant's demand that it cease its use of "Consor" or "Consor Engineering."  Plaintiff's response emphasized the very different nature of the parties' services and the very high level of sophistication found in the parties' respective clients.  Additionally, Plaintiff pointed out that its clients were largely public entities while Defendant's clients were largely private. *See* **Exhibit B**.

42.    Plaintiff's CONSOR ENGINEERS mark registered on December 19, 2019.  On January 30, 2020, Defendant sent an email to Plaintiff, now threatening to file a petition to cancel the CONSOR ENGINEERS mark unless Plaintiff agreed to use the combined term "Consor Engineers" "in all cases." *See* **Exhibit C**.

43.    On February 17, 2020, Plaintiff reiterated to Defendant that it "remain[ed] completely confident in [its] analysis" that consideration of the applicable factors to the  likelihood of confusion analysis could not support a finding of trademark infringement or support any petition to cancel Plaintiff's CONSOR ENGINEERS mark. *See id*.

44.    Despite denying the existence of any likelihood of consumer confusion,

COMPLAINT FOR DECLARATORY RELIEF

Plaintiff informed Defendant – as a mere business accommodation – that Plaintiff had "already made various changes" to its marketing.  Plaintiff did not offer these changes to Defendant prior to unilaterally deciding to implement them, nor seek any assurance from Defendant that Defendant would not sue or petition to cancel the CONSOR ENGINEERING mark prior to implementing the changes.  *See id.*

45.     Plaintiff's February 17, 2020 email also stated that Plaintiff may have been willing to make other changes (separate from those unilaterally implemented) to its marketing in order "to help to ensure that there can be no trademark confusion." Although Plaintiff reserved important elements of any purported agreement for the future, Defendant did not seek to negotiate them.  *See id.*

46.     Neither Plaintiff's February 17, 2020 email nor any prior/subsequent communications between the parties even discussed, much less agreed to, material terms that are typical and expected in binding settlement agreements, such as, critically, duration of the purported agreement and release of any claims.  No formal document was drafted or executed to memorialize the parties' 2020 business discussions over email.

47.     At the time of Plaintiff's February 17, 2020 email, Plaintiff understood itself to be making an unnecessary but good faith accommodation to Defendant, in the context of a business discussion.  Plaintiff did not intend to be indefinitely bound by this mere business accommodation.

48.     Plaintiff's first unilaterally-implemented accommodation was that it had "[e]nsured that its Facebook, Twitter, LinkedIn, Instagram and website pages all prominently display the combined term Consor Engineers."  Plaintiff had indeed ensured this was the case by the time of its February 17, 2020 email, but never stated that it would indefinitely continue to ensure it would always be the case.  Notably, this statement was not forward-looking, but rather written in the past tense to inform Defendant that a one-time review had occurred.  Plaintiff made no indication when writing this accommodation that it intended to be perpetually bound to repeat the

COMPLAINT FOR DECLARATORY RELIEF

action.

49.     Moreover, and as discussed *supra* at Paragraphs 23-29, Plaintiff's website and social media pages were *already* prominently displaying "Consor Engineers" or the truncated "consoreng" in their display names, domain names, and/or usernames prior to the parties' 2020 exchange.  Plaintiff's unilateral decision to check its website and social media pages to verify that its long-term use of its mark and branding was ongoing, and then relaying this information to Defendant, is not consideration.

50.     Plaintiff also informed Defendant that it had "retained and will continue to use its distinctive logo in connection with the term Consor, but will not use Consor standing alone without the distinctive logo."  As evident *supra* at Paragraphs 23-29, Plaintiff's website and social media pages have *always* used the standalone term "Consor" in connection with the Consor Engineers Logo.  Plaintiff even included screenshots in its February 17, 2020 email demonstrating this use.  *See* **Exhibit C**. (showing screenshot of the @CONSOREngineers Twitter account tweeting "This is CONSOR").  Plaintiff's unilateral decision to continue using "Consor" only in connection with the Consor Engineers Logo, as it had already been doing for years, is not consideration.

51.     Plaintiff's February 17, 2020 email also informed Defendant that Plaintiff had unilaterally implemented metadata and meta-description modifications that would display Plaintiff in search results as "Consor Engineers."  Plaintiff indeed made this modification by the time of its February 17, 2020 email, but never stated this would be its indefinite metadate and meta-descriptions.  Notably, again, Plaintiff's statement was not forward-looking, but written in the past tense to indicate the medication was a one-time, past event.  Plaintiff made no indication when writing this accommodation that it intended to be perpetually bound to repeat the action.

52.     Finally, Plaintiff's February 17, 2020 email informed Defendant that it had unilaterally contacted Glassdoor "to inform them of the correct identification of

Consor Engineers in the event that there are any future posts about the company." This statement too was written in the past-tense to denote a one-time contact unilaterally performed by Plaintiff, rather than any intent to be perpetually bound in the future. Moreover, contacting Glassdoor was in the equal, if not greater, interest of Plaintiff as the misdirected Glassdoor post was a 5-star, glowing review of Plaintiff.

53. Plaintiff did not hear from Defendant again for nearly <u>four</u> years following their 2020 exchange.

54. During those four years of silence from Defendant, Plaintiff's business expanded, but never into any business relating to Defendant's offerings. To reflect the evolution of Plaintiff's brand and services, Plaintiff underwent an aesthetic brand refresh in October 2022.

55. Plaintiff continued to refer to itself as "Consor" in connection with the Consor Engineers Logo as per its longstanding practice, as discussed *supra* at Paragraph 23. However, the refresh also resulted in a slightly modified Consor Engineers Logo. The logo's font was updated to rounded, lowercase lettering and the accompanying circular icon was modified to incorporate a stylized water drop alongside the stylized roadway design, reflecting Plaintiff's specialization in transportation *and* water infrastructure services. These updates rendered the Consor Engineers Logo even more distinctive than its predecessor – and even more dissimilar to Defendant's mark. An example image of Plaintiff's refreshed logo is embedded below:



56. Additionally in October 2022, Plaintiff updated its meta-descriptions for search browsers to refer to itself as "Consor – Engineering Firm | Water and Transportation" rather than as "Consor Engineers." This updated meta-description continues to include Plaintiff's status as an Engineering Firm and more clearly and accurately describes the nature of Plaintiff's current services, which are highly distinct

from Defendant's intellectual property services.  Plaintiff continues to utilize its original www.consoreng.com domain name, which is also visible in the search results and is a truncated form of "Consor Engineers."

57.   On February 8, 2024 – four years after the parties' last communication and almost two full years after Plaintiff's brand refresh, Defendant again reached out via email.  Defendant claimed: "Our agreement from the email below, was that your company would always use Consor with Engineers after it, or as a logo that is distinctly different from ours.  However…your company is no longer following that protocol and instead is using Consor without the necessary Engineers designation behind it." *See* **Exhibit D**.

58.   As discussed *supra* at Paragraphs 47-48 and 51-52, Plaintiff never intended to or agreed to be indefinitely bound when it made its 2020 business accommodation to Defendant.   Moreover, Plaintiff's February 17, 2020 accommodation did *not* state Plaintiff "would always use Consor with Engineers after it, or *as* a logo that is distinctly different from [Defendant's]" (emphasis added).  *See* **Exhibit C**.  Rather, Plaintiff's 2020 email stated it would "not use Consor standing alone *without* the distinctive logo." (emphasis added).  *Id.*  Plaintiff's use of its own mark has not deviated, as Plaintiff continues to use the (refreshed) Consor Engineers Logo locked-up with the word "Consor."

59.   Plaintiff never formally agreed to, nor made the accommodation that Plaintiff would make "no standalone usage of Consor," as Defendant claimed in its February 8, 2024 email.  *See id.*

60.   Defendant's February 8, 2024 email claimed – without evidentiary support – that Defendant was receiving "daily phone calls to our business phone number for Consor Engineers inquiries."  *See* **Exhibit D**.  Even if such misdirected communications occurred, they are not actionable consumer confusion and appear to be minimal.

61.   Plaintiff responded to Defendant on February 15, 2024 and stated that

1   Plaintiff's standalone use of "Consor" "does not create a likelihood of consumer
2   confusion and Consor Engineers therefore does not have an obligation to change the
3   way it uses its mark to curb any such likelihood." *See* **Exhibit E**.  Plaintiff declined
4   to make any changes to its use of its mark.

5       62.    Plaintiff's February 15, 2024 email additionally denied that the parties
6   had "entered into any agreement that regulates the use Consor Engineers may make
7   of its longstanding trademark." *See id.*

8       63.    On February 22, 2024, Defendant threatened that it would "take any
9   necessary action to protect [its] intellectual property asset" if Plaintiff did not continue
10  to follow "the protocol and agreement of four years ago," referencing and attaching
11  Plaintiff's February 17, 2020 unilateral business accommodation.  *See id.*

12      64.    On March 8, 2024, Plaintiff informed Defendant that Plaintiff's 2020
13  accommodations, while not intended to be binding, were nonetheless "still fully in
14  place."  Plaintiff specifically noted that "Consor Engineers is still closely linking
15  Consor with 'engineers' in all the same ways discussed previously.  Our usage is the
16  same as proposed in 2020 on LinkedIn, Facebook, our Website Footer, Glassdoor,
17  and in Google metadata.  As such, your statement 'there have been significant changes
18  to how your company is using the CONSOR intellectual property' is simply
19  inaccurate." *See id.*

20      65.    Also on March 8, Plaintiff informed Defendant that misdirected
21  consumer communications are not actionable consumer confusion.

22      66.    Nearly half a year later, on August 19, 2024, Plaintiff received a formal
23  demand letter from Defendant's counsel that again claimed the parties had "entered
24  into a settlement agreement" via their 2020 communications and threatened that
25  Defendant "is entitled to damages and an injunction compelling [Plaintiff's]
26  performance of the Settlement."  Defendant demanded that Plaintiff "sign a more
27  formal document reflecting the parties' settlement," in addition to changing its
28  marketing practices.  *See* **Exhibit F.**

67.     Defendant's August 19, 2024 demand letter also claimed that Plaintiff's use of its mark "is causing confusion as to the source or origin of the parties' respective services." *See id.*

68.     All communications between the parties relating to Defendant's claims and Plaintiff's responses have occurred via email or letter, and are attached to this complaint. *See* **Exhibits A-F**.

69.     The parties have not drafted or executed any formal document memorializing any terms of Plaintiff's use of CONSOR or CONSOR ENGINEERS.

70.     Defendant's unreasonable threats have created a reasonable apprehension of litigation and have placed a cloud over Plaintiff's ability to use its longstanding mark unencumbered.

71.     Defendant's allegations regarding Plaintiff's use of the "Consor" name and Defendant's assertions of contract formation and resulting breach has brought the parties into adversarial conflict with each other.

72.     Plaintiff desires to promptly resolve this adversarial conflict and establish that there exists no binding agreement between the parties and that Plaintiff is not in breach of any agreement with Defendant, and that Plaintiff is not infringing Defendant's rights, if any, or unfairly competing with Defendant.  Under all of these circumstances, there is a substantial controversy between the parties of sufficient immediacy to warrant the issuance of a declaratory judgment.

## **FIRST CAUSE OF ACTION**

### **Seeking A Declaration of No Contract**

73.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-72 above as if set forth herein.

74.     A real and actual controversy exists between Plaintiff and Defendant concerning a purported settlement agreement, in that Defendant contends an enforceable settlement agreement resulted from a handful of emails exchanged in

COMPLAINT FOR DECLARATORY RELIEF

2020 between the parties, and to which Defendant has threatened to hold Plaintiff liable for an alleged breach of the same.

75.     Contrary to Defendant's assertions, no settlement agreement was entered via the parties' 2020 communications.

76.     Plaintiff made a unilateral accommodation to Defendant on four fronts. This accommodation was implemented unilaterally, and Plaintiff did not negotiate the accommodation with Defendant or seek assurance that Defendant would not elevate the matter to a true legal dispute prior to that implementation.

77.     On three fronts, Plaintiff informed Defendant it already taken certain actions, and made no representation it intended to repeat those actions in the future, much less be bound to do so.  Plaintiff wrote in the past tense, and made no ongoing commitment to Defendant.   Informative statements about past actions cannot indefinitely bind Plaintiff to perpetually take those actions.

78.     On the fourth front, Plaintiff stated it would continue to use "Consor" in connection with the Consor Engineers Logo.  But Plaintiff's marketing has followed this standard since Plaintiff's business launched in 2018.   Thus, this front of the business accommodation represents no break with Plaintiff's established practice, and thus no valid consideration.

79.     No formal settlement document was negotiated, drafted, and executed by the parties.  Plaintiff stated it was "willing" to make other changes, but Defendant never sought to negotiate on these material terms that had been reserved for future discussion. The parties did not discuss *any* material terms to the purported agreement – not even its duration.  Absent supplementation, which did not occur, the 2020 communications are too vague standing alone to create perpetually binding obligations.

80.     Defendant recognized that the 2020 communications were too vague to be binding when it demanded on August 19, 2024 that Plaintiff "sign a more formal document reflecting the parties' settlement."  Defendant notably did not draft and

COMPLAINT FOR DECLARATORY RELIEF

attach the proposed "more formal" agreement, indicating that more terms needed to be discussed before a formal settlement agreement could be executed.

81. As a result, no valid, enforceable agreement formed between the parties.

## SECOND CAUSE OF ACTION

### Seeking A Declaration of No Breach

82. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-81 above as if set forth herein.

83. Because the 2020 communications are not a legally binding settlement agreement, Plaintiff cannot be liable for breach.

84. Even if the Court were to consider the 2020 communications to be a binding agreement – which it should not – Plaintiff would additionally not be liable for breach because its use of "Consor" has not materially changed from the uses flagged to Defendant in the 2020 communications.

85. Specifically, Plaintiff continues to only use "Consor" in connection with a Consor Engineers Logo, as across its website and social media pages and as it has done since its 2018 launch. Plaintiff never stated in the 2020 communications that it would never use "Consor" alone, nor only use it as part of the locked-up Consor Engineers Logo. Plaintiff therefore is not in breach on this front.

86. Additionally, Plaintiff never stated in the 2020 communications that it would take any future actions regarding displaying "Consor Engineers" as a combined term, contacting Glassdoor, and managing its meta data and descriptions. Nonetheless, Plaintiff has not materially changed its approach on these fronts either. For example, Plaintiff's updating of its meta-description on search engines from "Consor Engineers" to "Consor – Engineering Firm" is not a material difference, as it provides the same level of clarification while better representing Plaintiff's current services. Plaintiff therefore cannot be in breach on the remaining fronts.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## THIRD CAUSE OF ACTION

### Seeking A Declaration of No Trademark Infringement

87.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-86 above as if set forth herein.

88.     A real and actual controversy exists between Plaintiff and Defendant with respect to whether Plaintiff's use of CONSOR or CONSOR ENGINEERS infringes Defendant's rights in the CONSOR mark.

89.     Plaintiff and its affiliates' use of CONSOR or CONSOR ENGINEERS is not likely to cause confusion or cause mistake or deceive the relevant public with respect to the source or origin of the parties' services.

90.     As a result, Plaintiff's use of CONSOR or CONSOR ENGINEERS does not infringe any rights of Defendant under any provisions of the Lanham Act including 15 U.S.C. §1114 and 1125(a) or any state statute or common law, including Defendant's purported rights in the CONSOR mark.

91.     Plaintiff thus seeks a declaratory judgment that its use of CONSOR or CONSOR ENGINEERS does not infringe any rights of Defendant under 15 U.S.C. §1114, 1125(a), or any state statute or common law, including Defendant's purported rights in the CONSOR mark.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a declaratory judgment that:

1. No agreement was formed between Plaintiff and Defendant;

2. Plaintiff is not liable for breaching any purported agreement;

3. Plaintiff's use of CONSOR and CONSOR ENGINEERS is proper, lawful, and does not infringe and at all times has never infringed Defendant's purported rights in the CONSOR mark;

4. Awarding Plaintiff such other and additional relief as the Court deems just and proper.

COMPLAINT FOR DECLARATORY RELIEF

1

Dated:  September 20, 2024

**DLA PIPER LLP (US)**

2

3

By:  /s/ *Melissa A. Reinckens*

4

Melissa A. Reinckens (Bar No. 314657)
**DLA PIPER LLP (US)**

5

4365 Executive Drive, Suite 1100

6

San Diego, California 92121-2133
Telephone: 858.677.1400

7

Facsimile:858.677.1401

8

melissa.reinckens@us.dlapiper.com

9

Tamar Y. Duvdevani

10

(*pro hac vice* forthcoming)
**DLA PIPER LLP (US)**

11

1251 Avenue of the Americas, 27th Floor

12

New York, New York 10020-1104
Telephone: 212.335.4500

13

Facsimile: 212.335.4501

14

*Attorneys for Plaintiff*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF